IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RHONDA WILSON-COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV726 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rhonda Wilson-Coleman, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a POD and DIB on July 2, 2008 alleging a disability onset date of November 29, 2007. (Tr. 19, 128-131.)[2] The application was denied initially and again upon reconsideration. (*Id.* at 69-74, 77-79.) Plaintiff then requested a

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 83-89.) At the April 28, 2010 hearing were Plaintiff, her husband, her attorney, and a vocational expert ("VE"). (*Id.* at 30.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 19-29.) On July 14, 2011 the Appeals Council denied Plaintiff's request for review. (*Id.* at 7-11.) Plaintiff then requested that the Appeal's Counsel reconsider its decision. (*Id.* at 6.) On September 27, 2011, the Appeals Counsel reconsidered Plaintiff's request for review in light of additional evidence, and again denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was 32 years old on the alleged disability onset date. (*Id.* at 28.) She had at least a high school education and the ability to communicate in English, and her past relevant work was as a cashier and mail sorter. (*Id.* at 27-28.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401

2

Case 1:11-cv-00726-TDS-JLW   Document 20   Filed 11/12/13   Page 2 of 17

(1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any

3

medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)   Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2)   Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)   Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

4

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 29, 2007. (*Id.* at 21.) The ALJ next found in step two that Plaintiff's mild arthritic changes of the lumbar spine, fibromyalgia, anxiety, depression, and panic disorder were severe impairments. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) The ALJ reached the fourth step of the sequence, at which point he determined that Plaintiff could return to her past relevant work. (*Id.* at 27.) The ALJ also made an alternative step five finding that there were other jobs in the national economy that Plaintiff could perform. (*Id.* at 28.) Consequently, the ALJ concluded that Plaintiff was not disabled from the alleged onset date (November 29, 2007) through the date of the decision (June 21, 2010). (*Id.* at 29.)

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 22-27.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a limited range of unskilled light work involving lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting, standing and/or walking for six hours in an eight hour workday. (*Id.* at 22.) Plaintiff could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs and could occasionally balance. (*Id.*) She could never crawl and had frequent but not constant use of her right hand. (*Id.*) She should also avoid concentrated exposure to fumes and gases and needs a cane for assistance with balancing. (*Id.*)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff was capable of performing past relevant work as a cashier II and mail sorter. (*Id.* at 27.) The ALJ concluded that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*) The ALJ concluded in the alternative that there were other jobs in the national economy that Plaintiff could perform given her age, education, work experience, and RFC. (*Id.* at 28.) Specifically, the ALJ pointed to a number of positions noted by the VE as being consistent with an individual similarly situated to Plaintiff, including ticket seller, office helper, and routing clerk. (*Id.*) The ALJ thus concluded Plaintiff was not under a disability from the alleged onset date (November 29, 2007) through the date of the decision (June 21, 2010.) (*Id.*)

## V. ANALYSIS

Plaintiff raises two issues. First, Plaintiff contends that the ALJ failed to analyze the cumulative effect of her impairments on her ability to work. (Docket Entry 17 at 5.) Second, Plaintiff asserts that the ALJ failed to properly weigh the opinion of one of her treating psychologists. (*Id.* at 19.) As explained below, the second of these arguments has enough merit to justify a remand for further proceedings.

### A. The ALJ Properly Considered the Cumulative Effect of Plaintiff's Impairments.

Plaintiff contends that the ALJ failed to analyze the cumulative effects of her impairments. (Docket Entry 17 at 5-7.) An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* Social Security Ruling ("SSR") 96–8p. The RFC assessment is based on all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3); *see also* SSR 96-8p. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments." (citations omitted)). However, "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a [claimant's] complaints of pain and level of daily activities."

7

*Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted), *aff'd* 179 Fed. App'x 167 (4th Cir. 2006) (unpublished).

Here, it is clear from the ALJ's decision that he considered each of Plaintiff's impairments both individually and cumulatively. As noted, the ALJ concluded at step two that Plaintiff suffered from five severe impairments: (1) mild arthritic changes of the lumbar spine, (2) fibromyalgia, (3) anxiety, (4) depression, and (5) pain disorder. (Tr. 21.) At step three, the ALJ then addressed Plaintiff's arthritic changes, pain, and fibromyalgia by name and concluded that they did not meet or equal the relevant listings. (*Id.* at 21-22.) The ALJ then addressed Plaintiff's remaining impairments, her mental impairments, "singl[y] and in combination" and concluded that they did not meet or equal the listings. (*Id.* at 22.) In concluding that Plaintiff did not meet or equal a listed impairment, the ALJ also performed the "special technique" in assessing Plaintiff's mental impairments, concluding that Plaintiff had (1) mild restrictions in activities of daily living, (2) moderate difficulties in social functioning, (3) moderate difficulties in concentration, persistence, or pace, and (4) no episodes of decompensation of extended duration. (*Id.*)

The ALJ then evaluated Plaintiff's physical and mental residual functional capacity. After summarizing Plaintiff's testimony (*id.* at 23, 26) and to a lesser extent the testimony of her husband (*id.* at 26), the ALJ proceeded to evaluate the relevant medical opinions. Specifically, the ALJ addressed the opinions of (1) Dr. Paul J. Taney, a physician with the North Carolina Orthopedic Clinic, who concluded that Plaintiff's low back pain had essentially resolved through physical therapy by November 2006, (2) Dr. William A. Somer, who treated

8

Plaintiff's neck and back pain, and concluded that she was "reasonably physically fit," that she tended to exaggerate her symptoms, and that she was really at about a three or four out of ten on a one to ten pain scale, (3) Dr. Winston C. V. Parris, who provided Plaintiff a series of epidural steroid injections, (4) Dr. Kimberly A. Barrie, who advised Plaintiff to resume her normal activities after treatment of a May 2008 finger fracture, (5) Dr. Janet Johnson-Hunter, a state agency medical consultant, who concluded that Plaintiff possessed the RFC to perform medium work, but that she should avoid fumes, (6) Dr. Billy Keon Huh, who treated Plaintiff for pain and who noted that she had no significant disc bulge, that she displayed mild bilateral facet arthropathy, but that she lacked significant spinal canal stenosis, (7) Dr. Claudia Y. Digiaimo-Nunez, who treated Plaintiff for her mood disorder; concluding that she "was exaggerating many of her claims regarding her . . . symptoms" and ultimately discharging Plaintiff for not being "entirely honest" about "her payments," (8) Dr. Margaret Barham, a state agency psychological consultant, who concluded that Plaintiff appeared capable of performing simple, routine, repetitive tasks in a setting with low or medium production requirements, (9) Carol M. Gibbs, a state agency psychological consultant, who examined Plaintiff and found that she could understand simple, repetitive instructions and tasks but was moderately impaired in dealing with "work pressures" and dealing "effectively with other people," and (10) Dr. Mitchel Rapp, a state agency consultant who concluded that Plaintiff could understand and remember simple tasks; could perform routine, repetitive tasks; could relate to male coworkers "marginal[ly]; and who could adapt to routine interpersonal work demands and to stress while minimizing interpersonal demands. (*Id.* at 23-27.)

9

Moreover, in setting Plaintiff's RFC, the ALJ noted at the outset that he had given "careful consideration to the entire record," noted again in the body of his RFC evaluation that he had "considered all symptoms and the extent to which" they were consistent with the evidence, and noted a third time at the close of his RFC evaluation that he reached his conclusion based "on the totality of the evidence." (Id. at 22, 27.) Finally, the ALJ considered all the functional limitations that affected Plaintiff's RFC in his hypothetical to the VE through step four and in his alternative step five conclusions. (Id. at 27-28, 62-65.) Simply put, the ALJ's decision indicates that he considered Plaintiff's impairments in totality.[6]

### B. Because New Evidence Makes it Impossible to Determine If the ALJ's Decision Is Supported By Substantial Evidence, a Remand Pursuant to *Meyer v. Astrue* Is Proper.

Citing *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011), Plaintiff contends that the opinion of Dr. Christopher L. Edwards—a psychologist with the Duke University Medical Center who treated Plaintiff from March 2010 to the present—is entitled to controlling weight. (Docket Entry 17 at 8-10; Tr. 1012.) Plaintiff submitted a letter dated August 31, 2010 from Dr. Edwards, along with treatment notes, to the Appeals Counsel after the ALJ's June 21, 2010 decision. (Tr. 1-11, 972-1114.) The ALJ did not have this information before

---

[6] *See e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (concluding that an ALJ considered the combined effect of plaintiff's impairments when he determined that plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed in the regulations); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (concluding that the combination of impairments had been properly considered where the ALJ discussed each alleged impairment separately and then found that claimant's "impairments" did not prevent him from performing his past relevant work); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (concluding that where an ALJ considered all of a claimant's impairments, there is nothing to suggest that they were not properly considered in combination); *Gooch v. Sec'y of Health & Humans Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (concluding that the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered).

10

him in concluding that Plaintiff was not disabled under the Act, however, the Appeals Counsel considered it and found that it "does not provide a basis for changing the [ALJ's] decision." (*Id.* at 2, 7-8.) After reviewing the record, the undersigned is persuaded that remand is proper.

The administrative scheme for handling Social Security claims permits the claimant to offer evidence in support of the claim initially to the ALJ. Once the ALJ renders a decision, the claimant is permitted to submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b).[7] This new evidence is then made part of the record. The regulations, however, do not require the Appeals Council to expressly articulate the weight of the newly produced evidence and reconcile it with previously produced evidence before the ALJ. Instead, the Appeals Council is required only to make a decision on whether to review the case and, if it chooses not to grant a review, there is no express requirement that the Appeals Council articulate a reason for denying further review. *Meyer*, 662 F.3d at 705-06.

As the Fourth Circuit recently addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of

---

[7] More specifically, 20 CFR § 404.970(b) provides that:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 CFR § 404.970(b).

11

the record for purposes of substantial evidence review, but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. In *Meyer*, the ALJ denied benefits to a claimant based, in part, on the lack of any medical opinion from a treating physician addressing restrictions. *Id.* at 703. After the claimant submitted a medical opinion from his treating physician setting forth restrictions to the Appeals Council, the Appeals Council denied review of his case without any explanation, and the ALJ's decision became the decision of the Commissioner. *Id.* at 703–04. The district court affirmed the Commissioner's decision, but the Fourth Circuit reversed. The Fourth Circuit held that the regulatory scheme does not require the Appeals Council to explain its reasoning when denying review of an ALJ decision. *Id.* at 706.

However, the Fourth Circuit ultimately concluded that it could not tell whether the ALJ's decision was based upon substantial evidence. (*Id.* at 707.) The Fourth Circuit began its analysis of this issue by noting in the past that it had:

> affirmed an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council because we concluded that "substantial evidence support[ed] the ALJ's findings." *Smith v. Chater*, 99 F.3d 635, 638-39 (4th Cir. 1996). Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, we have reversed the ALJ's decision and held that the ALJ's denial of benefits was "not supported by substantial evidence." [*Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) ( en banc )].

*Meyer*, 662 F.3d at 707. The Fourth Circuit reasoned further that the court is not required to only affirm or reverse if it "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here." *Id.* The Fourth Circuit also noted that:

> [t]he ALJ emphasized that the record before it lacked 'restrictions placed on the claimant by a treating physician,' suggesting that this evidentiary gap played a role in its decision. Meyer subsequently obtained this missing evidence from his treating physician. That evidence corroborates the opinion of [a consulting physician], which the ALJ had rejected. But other record evidence credited by the ALJ conflicts with the new evidence . . . .

*Id.* at 707. The Fourth Circuit observed that "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." *Id.* Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the Fourth Circuit concluded that it "cannot undertake it in the first instance." *Id.*

This case is sufficiently similar to *Meyer* to justify a remand. Here, no fact finder has made any findings as to Dr. Edwards' opinions or has attempted to reconcile his records with the conflicting and supporting evidence in the record. As noted in *Meyer*, assessing the probative value of competing evidence is quintessentially the role of the fact finder and this Court is not authorized to undertake the analysis in the first instance. Given the nature of this new and unreconciled evidence, it is impossible to tell whether the ALJ's decision is based on substantial evidence. For example, Dr. Edwards' April 13, 2010 progress note—written more than two months prior to the ALJ's decision—opines that Plaintiff has severe and marked symptoms and a GAF score of 45.[8] (TR. 1015-18.) Specifically, it indicates the "marked"

---

[8] The GAF ranges from zero to one hundred and is used to rate an individual's psychological, social, and occupational functioning. *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 27, 32-34 (4th Ed., Text Revision 2000). Scores between 41 and 50 indicate serious symptoms or a "serious impairment in social, occupational, or school functioning." *Id.*

13

presence in Plaintiff of (1) response to traumatic event intense fear/helplessness, (2) exposure to traumatic event, (3) re-experiencing of event (flashbacks), (4) recurrent dreams/nightmares relieving trauma – flashbacks, (5) recurrent distressing event recollection, (6) physiological arousal to cues about event, (7) avoid thoughts feeling or conversations, (8) depressed mood, (9) sweating, (10) shortness of breath, (11) paresthesias, (12) palpitations, pounding heart, (13) fear of losing control or going crazy, (14) fear of dying, (15) chest pain or discomfort, and (16) anticipatory worry. (*Id.* at 1015-16.) This progress note indicates further the presence of "severe" (1) psychological distress at cues that symbolize trauma, (2) avoid activities places or people, (3) insomnia, (4) exaggerated startle response, (5) back pain, (6) muscle pain, (7) worthlessness or guilt, (8) psychomotor agitation or retardation, (9) fatigue, (10) insomnia or hypersomnia. (*Id.*)

New documentation such as this goes directly to the severity of Plaintiff's mental health issues. As Plaintiff correctly points out, this new material could also reasonably be viewed as corroborating the medical opinion of Dr. William A. Somers that Plaintiff's problems were primarily psychological. (Docket Entry 17 at 10 referencing Tr. 475.) This new evidence also helps to fill at least part of an evidentiary gap in the record regarding mental health treatment Plaintiff received after being discharged by Dr. Digiaimo-Nunez in 2008. Additionally, Dr. Edward's letter and records offer an explanation which tie Plaintiff's symptom exaggeration not merely to her credibility but also to significant underlying psychological impairments. This is not to say that Plaintiff was necessarily disabled under the Act during the time in question. Rather, it is to say that in light of the holding in *Meyer*, the

14

undersigned is persuaded that a fact finder should consider all the additional evidence and reconcile it with the conflicting and supporting evidence in the record. *See, e.g., Schilling v. Colvin*, No. 7:11–CV–176–FL, 2013 WL 1246772, at *7 (E.D.N.C. March 26, 2013) (concluding that "the evidence that the ALJ did not address in her opinion raises too many conflicts of fact, requiring weighing of the probative value of competing evidence, for the court to undertake review of the impact of the new evidence in the first instance"); *Green v. Astrue*, No. 4:11–1817–RMG, 2013 WL 267626, at *4 (D.S.C. 24 Jan. 2013) ("Existing regulatory standards allow this newly presented information to be presented at the Appeals Council stage, and *Meyer* requires that any new opinions from a medical source must be weighed and reconciled by the fact finder if in conflict with other evidence credited by the ALJ."); *Pace v. Astrue*, C/A No. 1:10–3256–MGL–SVH, 2012 WL 4478370 (D.S.C. Aug. 3, 2012) ("The same considerations that caused the Fourth Circuit to remand *Meyer* are present here. [L]ike the claimant in *Meyer*, Plaintiff presented additional evidence to the Appeals Council, which is now in the record, that no factfinder has attempted to reconcile with conflicting and supporting evidence in the record.")

Defendant's arguments to the contrary are not persuasive. First, Defendant is correct to point out that the Dr. Edwards' August 2010 letter strays at points into territory reserved to the Commissioner. (Docket Entry 19 at 10.) For example, Dr. Edwards' conclusion that Plaintiff is "not employable" is a legal determination for the Commissioner and not a medical source. *See* 20 C.F.R. § 404.1527(e)(1) (explaining that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are

disabled"); *see also id.* § 404.1527(e)(3) (stating that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner").[9] Nevertheless, as made clear above, the new evidence submitted consists of more than this single statement.[10]

Second, Defendant characterizes Dr. Edwards' letter as equivocal on the issue of symptom magnification. (Docket Entry 19 at 10.) That letter states that "some symptom magnification is common among patients who are: (1) suffering from pains and psychiatric illness, (2) who believe their suffering is unheard and/or not sufficiently responded to or, (3) have not taken full advantage of clinical psychiatric services that are available to them . . . . *These patients* often present with an overwhelming set of reports of clinical symptoms of suffering and they often elevate scales that measure symptom magnification. In the case of [Plaintiff] it is my best medical judgment that all 3 explanations *may* validly apply to her circumstance." ((Tr. 1013) (emphasis added).) The undersigned is not convinced that such a fine parsing of Dr. Edwards' words is warranted here, especially given that elsewhere in this letter Dr. Edwards states that "[M]odest attempts to draw attention to legitimate suffering do not invalidate her history of negative workplace experience, her psychiatric reactions those experience, or the nature and scope of her current limitations." (*Id.*)

---

[9] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations.

[10] Defendant asserts in passing that "Psychologist Edwards is neither a vocational expert nor a physician." (Docket Entry 19 at 10.) Although the opinion of a "treating source" may—but need not—be entitled to controlling weight under the relevant regulations, 20 C.F.R. § 404.1527(d)(2), this deference is limited to the opinion of an "acceptable" medical source. *See* 20 C.F.R. § 404.1502. Licensed psychologists are included in the definition of "acceptable medical sources." *Id.* § 404.1513(a). So, while Defendant's observation may be factually true, it appears legally irrelevant.

16

Third, Defendant contends that the weight of the record supports the ALJ's conclusion that Plaintiff was not disabled. (Docket Entry 19 at 6-8, 11.) However, this argument largely begs the question before the Court, which is what weight, if any, to attribute to this new material and how to reconcile it with the remainder of the record. As explained, no factfinder has ever made any findings as to Dr. Edwards' opinions or has attempted to reconcile his records with the conflicting and supporting evidence in the record. The undersigned is persuaded that the Fourth Circuit would not have this Court conduct that analysis in the first instance and that remand is appropriate in a situation such as this.

## VI. CONCLUSION

After a careful consideration of the record, the Court finds that it cannot determine whether the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment for Plaintiff (Docket Entry 16) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
November 12, 2013